**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| **BARBARA MORROW and BENNY MORROW, individually and on behalf of those similar situated**, <br><br> Plaintiffs, <br><br> v. <br><br> **ALLSTATE INDEMNITY COMPANY, ALLSTATE INSURANCE COMPANY, ALLSTATE FIRE & CASUALTY INSURANCE COMPANY, and ALLSTATE PROPERTY & CASUALTY INSURANCE COMPANY**, <br><br> Defendants. | Civil Action No. 5:16-CV-137 (HL) |

**ORDER**

The Defendants have moved to dismiss the claims of Plaintiffs Barbara Morrow and Benny Morrow pursuant to Fed. R. Civ. P. 12(b)(6). (Doc. 13). The motion is **GRANTED in part** and **DENIED in part**.

## I.    FACTUAL BACKGROUND[1]

Plaintiffs Barbara Morrow and Benny Morrow seek relief on behalf of themselves and others similarly situated for Defendants' alleged refusal to assess and pay damages for diminished value for claims made under their homeowners' insurance policies. As recognized by both parties, this case is part

---

[1] The facts are taken from the allegations in the Complaint (Doc. 1) and are accepted as true for purposes of this motion.

of a series of cases seeking to certify in this district a class-action for diminished value in the real-property-insurance context.  (See, e.g., Doc. 18, p. 15; Doc. 19, p. 8).

Plaintiffs' Complaint contains four counts: Count 1 (Doc. 1, ¶¶ 85–96), breach of contract for failure to assess diminished value; Count 2 (Doc. 1, ¶¶ 97–106), breach of contract for failure to pay diminished value; Count 3 (Doc. 1, ¶¶ 107–116), declaratory judgment that the Defendants have an obligation to their insureds to assess and pay for diminished value "when policyholders present first-party physical damage claims arising from direct physical losses to their insured properties" (Doc. 1, p. 36); and Count 4 (Doc. 1, ¶¶ 117–119), attorneys' fees and costs.

Plaintiffs allege that they "timely reported two claims for direct physical loss to their home—one involving water damage and the other involving foundational and/or structural support damage."  (Doc. 1, ¶ 2).  Plaintiffs argue that "Defendants breached their insurance contract with Plaintiffs by (1) failing to assess [their] property for diminution in value resulting [from] the damage giving rise to the covered claims and (2) failing to pay Plaintiffs for such diminution in value."  (Doc. 1, ¶ 2).  The foundational and/or structural support damage occurred on April 15, 2010, and the water damage occurred on July 14, 2015. (Doc. 1 ¶¶ 39, 44).  Following the incidents of damage, Allstate Indemnity Company ("Allstate Indemnity") "adjusted Plaintiffs' claim arising out of the . . . loss[es], authorized repairs to [their] home, and subsequently paid certain repair

costs," but "took no action to assess any diminution in the fair market value of [their] property." (Doc. 1, ¶¶ 40–41, 45–46).

Although Plaintiffs identify Allstate Indemnity as the issuer of the policy, (Doc. 1, ¶ 4), Plaintiffs seek to hold additional defendants liable by invoking theories of agency, apparent agency, alter ego, joint venture, and the juridical link doctrine. (Doc. 1, ¶¶ 23–26).

Allstate Indemnity's policy covers "sudden and accidental direct physical loss to [the insured's dwelling] . . . except as limited or excluded in this policy." (Doc. 13-1, p. 23).[2] Defendants argue that Plaintiffs' diminished value claim fails because of the limiting language of Section (5)(c) of the Section I Conditions included in the policy, the "Building Structure Reimbursement" provision. This provision appears immediately after and is related to Sections (4) and (5)(b). These provisions state, in relevant part, the following:

4. **Our Settlement Options**

In the event of a covered loss, **we** have the option to:

a) repair, rebuild or replace all or any part of the damaged, destroyed or stolen property with property of like kind and quality within a reasonable time; or

b) pay for all or any part of the damaged, destroyed or stolen property as described in Condition 5 "How We Pay For a Loss." . . . .

---

[2] The parties agree that the policies in effect in 2010 and 2015 should be treated as identical for the purposes of this action. (Doc. 13, p. 3; Doc. 18, p. 3 n.1). Therefore, the Court will cite to the 2010 policy with the understanding that the language is identical to the 2015 policy.

5.  **How We Pay For A Loss**

. . . [P]ayment for covered loss will be by one or more of the following methods: . . . .

b)  Actual Cash Value.  If **you** do not repair or replace the damaged, destroyed or stolen property, payment will be on an actual cash value basis.  This means there may be a deduction for depreciation . . . .

**You** may make claim for additional payment as described in paragraph "c" and paragraph "d", if **you** repair or replace the damaged, destroyed or stolen covered property within 180 days of the actual cash value payment.

c)  Building Structure Reimbursement . . . **[W]e** will make additional payment to reimburse **you** for cost in excess of actual cash value if **you** repair, rebuild or replace damaged, destroyed or stolen covered property within 180 days of the actual cash value payment . . . .

Building Structure Reimbursement will not exceed the smallest of the following amounts:

1) the replacement cost of the part(s) of the **building structure(s)** for equivalent construction for similar use on the same **residence** premises;

2) the amount actually and necessarily spent to repair or replace the damaged **building structure(s)** with equivalent construction for similar use on the same **residence premises**; or

3) the limit of liability applicable to the **building structure(s)** as shown on the Policy Declarations for **Coverage A – Dwelling Protection** or **Coverage B – Other Structures Protection**, regardless of the number of **building structures** and structures other than **building structures** involved in the loss.

4

(Doc. 13-1, pp. 33–34) (emphasis in original).

## II.  DISCUSSION

### A.  Motion to Dismiss Standard

The Federal Rules of Civil Procedure require that a pleading contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must allege sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Garfield v. NDC Health Corp., 466 F.3d 1255, 1261 (11th Cir. 2006) (internal quotation marks and citation omitted).  However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'"  Iqbal, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).  "[C]onclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal."  Oxford Asset Mgmt., Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).  The complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Twombly, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged

facts.  <u>Marshall Cty. Bd. of Educ. v. Marshall Cty. Gas Dist.</u>, 992 F.2d 1171, 1174 (11th Cir. 1993).

### B.    Counts 1 and 2: Breach of Contract for Failure to Assess and Pay Diminished Value

Defendants contend that Plaintiffs' breach of contract claims should be dismissed because (1) Plaintiffs have not "allege[d] sufficient facts to show that Defendants had a contractual obligation to assess and pay for diminution in value;" (2) Plaintiffs "attempt to overcome the contractual deficiencies by misstating mere legal conclusions;" (3) Plaintiffs "fail to allege sufficient facts to show that they suffered any damages entitling them to recovery"; and (4) Plaintiffs' "claim based on the 2010 loss is time barred."  (Doc. 13, pp. 3–9). Defendants further argue that Plaintiffs' alternative request for relief in the form of specific performance and/or an injunction should be dismissed.  (Doc. 13, pp. 8–9).

### 1.    Whether the policy covers diminished value

Defendants contend that the policy between Plaintiffs and Allstate Indemnity does not cover diminished value, and thus Allstate Indemnity did not breach the contract when it failed to assess or pay for diminished value to Plaintiffs' home.  (Doc. 13, p. 3).  Plaintiffs argue that based on the policy's coverage of "sudden and accidental direct physical loss," Allstate Indemnity is required under Georgia law to pay diminished value.  (Doc. 18, p. 10).  Plaintiffs primarily rely on two cases: <u>State Farm Mutual Automobile Insurance Company</u>

v. Mabry, 556 S.E.2d 114 (Ga. 2001) and Royal Capital Development, LLC v. Maryland Casualty Company, 728 S.E.2d 234 (Ga. 2012).

In Mabry, the Georgia Supreme Court addressed "whether Georgia law, as applied to the contract at issue, requires insurers to assess vehicles presented with first-party physical damages claims for diminution in value and, if found, pay it; and, if so, whether State Farm has sought to avoid that obligation." 556 S.E.2d at 117. The physical damage coverage in State Farm's policies provided that it would "pay for loss to your car" with a limitation of liability provision providing the insurer will pay the "lower of the actual cash value of the vehicle or the cost of repair or replacement." Id. at 118. Reviewing 75 years of Georgia case law, the Georgia Supreme Court concluded that "Georgia . . . has been consistent in interpreting the physical damage coverage of automobile insurance policies to require that the insured be made whole, basing the measure of damages on the value of the vehicle." Id. at 122. Thus, the Georgia Supreme Court held that "State Farm is obligated to pay for diminution in value when it occurs," noting that "what is lost when physical damage occurs is both utility and value," and that "[r]ecognition of diminution in value as an element of loss to be recovered on the same basis as other elements of loss merely reflects economic reality." Id. Further, the Georgia Supreme Court held that the trial court correctly determined that State Farm was obligated to assess diminution in value "along with the elements of physical damage when a policyholder makes a general claim of loss." Id. at 122–23.

In Royal Capital, the Georgia Supreme Court held that Mabry is not limited to automobile insurance policies.  Specifically, the Georgia Supreme Court answered this certified question from the Eleventh Circuit: Does "an insurance contract providing coverage for 'direct physical loss of or damage to' a building" require compensation "for the diminution in value of the property resulting from stigma due to its having been physically damaged?"  Royal Capital, 728 S.E.2d at 235.  The Georgia Supreme Court answered the question in the affirmative, holding that Mabry "is not limited by the type of property insured, but rather speaks generally to the measure of damages an insurer is obligated to pay."  Id. at 235.  The Georgia Supreme Court reiterated the "long-standing contract interpretation rule in Georgia" that it followed in Mabry: "[W]here '[an] insurance policy, drafted by the insurer, promises to pay for the insured's loss; what is lost when physical damage occurs is both utility and value; therefore, the insurer's obligation to pay for the loss includes paying for any lost value.'"  Id. at 238 (second alteration in original) (quoting Mabry, 556 S.E.2d at 122).

Defendants attempt to distinguish the policy language at issue in this case from the language at issue in Mabry and Royal Capital in two ways: the coverage language itself, and the presence of the "Building Structure Reimbursement" provision.  (Doc. 3, p. 2–3).

The general loss provision in the Royal Capital policy covers "direct physical loss," whereas the general loss provision in Plaintiffs' contract with Allstate Indemnity covers "sudden and accidental direct physical loss to

property."  The two are functionally equivalent.  Defendants seek to distinguish the two by arguing that, unlike the policy at issue in Royal Capital, the policy here covers only "sudden and accidental direct physical loss to property."  (Doc. 19, p. 3).  Defendants argue that "[d]iminished value is not a 'sudden' or 'accidental' loss, nor is it a 'physical' loss."  (Doc. 19, p. 3).  This exact argument was raised and rejected by a recent decision out of the Middle District of Georgia, Anderson v. American Family Insurance Company, No. 5:15-CV-475 (MTT), 2016 WL 3633349 (M.D. Ga. June 29, 2016).  The Court rejects the argument here for the reasons given therein.

Second, Defendants argue that the Building Structure Reimbursement provision precludes diminished value liability.  They contend that liability is strictly tied to repair and replacement cost and point out that the policy never mentions diminished value.  (Doc. 13, p. 4).  Because Allstate Indemnity authorized and paid for repairs to Plaintiffs' home, Defendants contend Allstate Indemnity has satisfied its obligations under the policy.  (Doc. 13, p. 4).

As a starting point, the fact that the loss settlement provision in the Morrows' policy provides that Allstate Indemnity will pay for the actual repair costs does not abrogate Allstate Indemnity's obligation to compensate for any diminished value resulting from stigma.  Royal Capital, 728 S.E.2d at 236 ("[A] limitation of liability provision affording the insurer an option to repair serves only to abate, not eliminate, the insurer's liability for the difference between pre-loss value and post-loss value." (quoting Mabry, 556 S.E.2d at 121)).  Indeed, the

Georgia Supreme Court in <u>Mabry</u> reiterated that repair means "restoration of the [property] to substantially the same condition and *value* as existed before the damage occurred."   556 S.E.2d at 121 (emphasis added) (internal quotation marks and citation omitted).

As a separate matter, Defendants' reliance on the specific limitations on the amount of Building Structure Reimbursement—the market cost of replacing damaged structure or the amount actually and necessarily spent to repair or replace damaged structure—is flawed because it ignores the context of this provision.   The Building Structure Reimbursement is designed to work in conjunction with the "actual cash value payment," which Section 5(b) of the Section I Conditions in the policy requires Allstate Indemnity to pay to the insured if the insured did not choose to repair or replace the property prior to settlement. "Actual cash value" implies the obligation to compensate for any diminished-value losses sustained by the insured.   <u>Mabry</u>, 556 S.E.2d at 118.   As correctly noted by Plaintiffs, because the Building Reimbursement Payment is a payment *in addition to* the actual cash value payment, any limitations in the Building Structure Reimbursement provision are irrelevant.   (Doc. 18, p. 4).

Defendants argue that Plaintiffs have not sufficiently alleged the specific provision of the contract that Allstate Indemnity breached and cannot rely solely on the covenant of good faith and fair dealing.   (Doc. 13, pp. 4–5).   This argument is nothing more than new clothes for their previous argument that the policy does not cover diminished value.  As noted by Plaintiffs, they have alleged

that their policies covered "direct physical loss" and that Allstate Indemnity "failed to assess for and pay [their] diminution in value loss" in making the Plaintiffs whole.  (Doc. 1, ¶ 58; Doc. 18, p. 12).   Plaintiffs are not solely relying on the covenant of good faith and fair dealing, but rely on these doctrines in conjunction with their claim for diminished value as an element of "direct physical loss" under Mabry and Royal Capital.

Accordingly, Allstate Indemnity's motion to dismiss on this ground is denied.

### 2.    Whether Plaintiffs have sufficiently alleged diminished value

Defendants argue that, even assuming the policy covers diminished value, Plaintiffs have failed to state a claim for breach of contract because their allegations of diminished value are conclusory.  (Doc. 13, pp. 5–6).  Further, Defendants contend that Plaintiffs have failed to adequately allege any damages from the alleged breach of contract because they have claimed injury and harm without any factual support.  (Doc. 13, pp. 6–7).  Defendants aver that Plaintiffs' "naked assertions" that "the fair market value of [their] property was diminished" are insufficient to plead the third element of a breach of contract action.  (Doc. 13, pp. 7–8 (quoting Doc. 1, ¶¶ 40, 45)).  Defendants argue that these assertions require supporting facts about the "respective value of the property before the loss and after repair, or which would establish that any diminution in value was

the result of the loss as opposed to extraneous factors or market conditions." (Doc. 13, p. 7).

Plaintiffs argue they plausibly alleged that Allstate Indemnity's failure to assess and to pay for diminished value caused them to suffer monetary damage. (Doc. 18, p. 5). They point out that the Georgia Supreme Court in Royal Capital recognized that real property can suffer diminished value as a result of repairs. (Doc. 18 at 6). They also argue that because the "standard seller's property disclosure statement" requires a seller to disclose insurance claims and water damage, these claims clearly impact home values. (Doc. 18, p. 6). Defendants respond that, while Plaintiffs have alleged that real property can *conceivably* suffer diminished value as a result of the damage alleged, the allegations in the complaint do not allege that the property *in fact* suffered diminished value. (Doc. 19, p. 4). Defendants contend that Plaintiffs are arguing that a claim for damage supports a diminished value claim per se. (Doc. 19, p. 4).

The Court disagrees. Plaintiffs allege that their home suffered foundational and/or structural support damage, water damage, and mold damage. (Doc. 1, ¶¶ 39, 44). They further allege that Allstate Indemnity authorized repairs and, despite these repairs, the fair market value of their home diminished because of the damage. (Doc. 1, ¶¶ 40, 45). These allegations, taken as true with all reasonable inferences drawn in Plaintiffs' favor, are sufficient to show that their claim for diminished value is more than conceivable, but plausible. Accordingly, Defendants' motion to dismiss on this basis fails.

### 3.    Whether Plaintiffs' claim based on the 2010 loss is time-barred

Defendants argue that the 2010 loss is time-barred because the policy requires that "any suit against [the insurer] [ ] be brought within one year after the inception of loss or damage. (Doc. 13, p. 8; Doc. 13-1, p. 36). Plaintiffs counter that Allstate Indemnity has waived this contractual limitation, making Georgia's six-year statute of limitations for breach of contract the only applicable limitations period. (Doc. 18, p. 14). Plaintiffs contend that, because Allstate Indemnity accepted the 2010 claim as a covered event and never specifically denied liability, including liability for diminished value, it waived this contractual limitation. (Doc. 18, p. 15).

The contract limitation of time to bring an action against the insurer in an insurance policy is valid and binding. Georgia Farm Bureau Mut. Ins. Co. v. Pawlowski, 643 S.E.2d 239, 241 (Ga. Ct. App. 2007). However, a waiver of the contractual limitations period may result when the insurance company's "'investigations, negotiations, or assurances . . . up to and past the period of limitation . . . led the insured to believe the limitation would not apply.'" Suntrust Mortg., Inc. v. Georgia Farm Bureau Mut. Ins. Co., 416 S.E.2d 322, 324 (Ga. Ct. App. 1992) (quoting Modern Carpet Indus. v. Factor Ins. Assn., 186 S.E.2d 586, 587 (Ga. Ct. App. 1971)). "The basis for finding a waiver of the contractual limitations period is the insurance company's implied or express promise to pay the claim, thus leading the insured to believe that there is not controversy

concerning whether the claim is covered." Glass Elec. Co., Inc. v. Commercial Union Ins. Co., 711 F.Supp. 615, 617 (N.D. Ga. 1988). Waiver occurs only when "the insurer's conduct reasonably leads the insured to believe that a strict compliance with the limitation provision would not be insisted upon. Where there is evidence of such conduct, the issue of waiver is a question of fact for the jury to decide." Stapleton v. General Acc. Ins. Co., 512 S.E.2d 645, 646 (Ga. Ct. App. 1999) (citing Appleby v. Merastar Ins. Co., 477 S.E.2d 887, 888 (Ga. Ct. App. 1996).

Plaintiffs have failed to allege facts sufficient to convince the Court that Allstate Indemnity waived the contractual limitations period. In the Complaint, Plaintiffs make the following allegations concerning the 2010 loss:

38. On April 15, 2010, Plaintiffs' home and property was insured under the Policy.

39. On April 15, 2010, Plaintiffs' home suffered foundational and/or structural support damage that was covered by the Policy. Plaintiffs timely reported the direct physical loss to Allstate and otherwise complied with the terms and conditions of the Policy.

40. Allstate adjusted Plaintiffs' claim arising out of the April 15, 2010 loss, authorized repairs to Plaintiffs' home, and subsequently paid certain repair costs. The repair costs associated with the claim were greater than $50,000. Despite those repairs, as a result of the foundational and/or structural support damage to Plaintiffs' property, the fair market value of Plaintiffs' property was diminished.

41. At the time Allstate authorized the repairs to Plaintiffs' home and adjusted the claim arising from the covered loss on April 15, 2010, Allstate took no action to assess any diminution in the fair market value of Plaintiffs' property.

14

(Doc. 1, ¶¶ 38–41).  Notably lacking from these allegations is any mention of any investigation, negotiation, or assurances to pay made by Allstate Indemnity, or any suggestion that Plaintiffs abstained from filing a lawsuit during the one-year limitations period based on conduct by Allstate Indemnity.   Certainly, the allegations in the Complaint, without more, do not constitute the "'type of conduct designed to lull a claimant into a false sense of security so as to constitute' a waiver of the limitation defense." Pawlowski, 643 S.E.2d at 241 (citing Giles v. Nationwide Mut. Fire Ins. Co., 405 S.E.2d 112 (Ga. Ct. App. 1991)); see also Suntrust Mtg., Inc. v. Ga. Farm Bureau Mut. Ins. Co., 416 S.E.2d 322 (Ga. Ct. App. 1992) (enforcing contractual limitation clause where there was no evidence of continuing negotiations or an affirmative promise, statement or other act to lead insured into believing that insurer intended to enlarge limitation period in contract).  Without determining whether the circumstances at issue in this lawsuit could ever give rise to a waiver of the contractual limitations period, the Court concludes that Plaintiffs have failed to allege facts sufficient to constitute a waiver of the limitations period with respect to the 2010 loss.

A dismissal without prejudice of the claims based on the 2010 loss would, in effect, be a dismissal with prejudice, due to the running of Georgia's six-year statute of limitations for breach of contract claims.  Accordingly, the Court will allow Plaintiffs twenty-one (21) days from the date of this Order in which to file an amended complaint containing allegations sufficient to survive Defendants'

Motion to Dismiss.  If Plaintiffs fail to file an amended complaint within twenty-one (21) days, Plaintiffs' breach of contract claims for the 2010 loss will be dismissed.

### 4.    Request for Injunctive Relief or Specific Performance

Under both Counts 1 and 2, Plaintiffs alternatively seek "specific performance and/or an order enjoining Defendants' ongoing and/or future nonperformance to prevent irreparable harm[.]"    (Doc. 1, ¶¶ 96, 106). Defendants move to dismiss Plaintiffs' request for injunctive relief and/or specific performance, arguing that Plaintiffs are not entitled to any remedy because they have failed to state a claim for breach of contract.  (Doc. 13, pp. 8–9).  Further, with respect to Plaintiffs' failure to pay claim, Defendants argue that injunctive relief is "nonsensical," because Plaintiffs have an adequate remedy in a legal action for damages and because diminished value must be determined on a case-by-case basis.  (Doc. 13, p. 9).

The Court has determined that Plaintiffs have stated a claim upon which relief may be granted for breach of contract.   As a result, Defendants' first argument in support of their motion to dismiss Plaintiffs' request for injunctive relief and/or specific performance is without merit.  Defendants' next argument, that Plaintiffs cannot seek equitable relief because they have an adequate remedy at law, is similarly unavailing.  The Court cannot say at this point that Plaintiffs have an adequate remedy at law in the form of a damages award. See, e.g., Mabry, 556 S.E.2d at 123 (upholding an injunction ordered by the trial court "to require a party to perform contractual duties which the trial court has

declared that party is obligated to perform"). Finally, Defendants' argument that diminished value must be determined on a case-by-case basis is a class-based argument and is not relevant at this stage of the litigation.

### C.    Count 3: Declaratory Judgment

Defendants move to dismiss Count 3 of the Complaint, in which Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 based on Defendants' "uniform and systematic policy of failing to assess for or pay diminished value." (Doc. 1, ¶ 12). Defendants argue that Plaintiffs' "failure to adequately allege breach or identify any specific provision of the contract which Defendants violated is fatal to their declaratory judgment claims." (Doc. 13, p. 10). Further, Defendants contend that Plaintiffs have failed to establish an actual case or controversy for purposes of the Declaratory Judgment Act because any actual controversy alleged by Plaintiffs is subject to a series of contingencies. (Doc. 13, p. 10). Finally, Defendants aver that a determination of coverage provided by the policy is inappropriate for declaratory relief. (Doc. 13, p. 11).

Plaintiffs counter that they have sufficiently alleged a breach of contract; that they have shown a "substantial likelihood" of future injury, which is sufficient for purposes of establishing an actual case or controversy under the Declaratory Judgment Act; and, finally, that claims for declaratory relief often arise in insurance coverage disputes and are therefore appropriate for declaratory relief. (Doc. 18, pp. 15–16). Plaintiffs acknowledge that courts in this district have

considered their arguments in favor of declaratory relief in similar cases and have rejected those arguments.  (Doc. 18, p. 15).

The Declaratory Judgment Act,[3] "echoing the 'case or controversy' requirement of Article III of the Constitution, provides that a declaratory judgment may only be issued in the case of an 'actual controversy.'"  Emory v. Peeler, 756 F.2d 1547, 1551–52 (11th Cir. 1985); see also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 126–27 (2007) ("[T]he phrase 'case of actual controversy' in the Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III."  (citation omitted)).  "Whether such a controversy exists is determined on a case-by-case basis."  Atlanta Gas Light v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (citation omitted).

The Supreme Court has recognized that its decisions "do not draw the brightest of lines between those declaratory-judgment actions that satisfy the case-or-controversy requirement and those that do not."  MedImmune, Inc., 549 U.S. at 127.  "Basically, the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  Id. (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).  The controversy "may not be conjectural, hypothetical, or contingent; it must be real and immediate, and create a definite, rather than speculative threat of future injury."  Emory, 756 F.2d

---

[3] 28 U.S.C. § 2201(a).

at 1552.  "There must be a substantial likelihood that the plaintiff will suffer future injury: a 'perhaps' or 'maybe' chance is not enough."   Malowney v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999).  "The remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments."   Emory, 756 F.2d at 1552. Plaintiffs bear the burden of establishing that the declaratory relief they seek satisfies the case-or-controversy requirement.   Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).

Plaintiffs argue that the following facts show a "substantial likelihood of future injury": "(1) Plaintiffs are current insureds of Defendants, (2) Plaintiffs have a 10% likelihood of submitting a covered claim in any given year, and (3) Defendants will not assess for or pay diminished value if Plaintiffs submit a covered claim because Defendants have a systematic and ongoing policy of not assessing for or paying diminished value."  (Doc. 18, pp. 15–16).  However, as stated by the Eleventh Circuit, "[t]he remote possibility that a future injury may happen is not sufficient to satisfy the 'actual controversy' requirement for declaratory judgments."   Malowny v. Fed. Collection Deposit Grp., 193 F.3d 1342, 1347 (11th Cir. 1999).   Plaintiffs must allege facts to establish "a reasonable expectation that the injury they have suffered will continue or will be repeated in the future."   Id.  Because Plaintiffs' injury is contingent upon their home suffering damage, "the practical likelihood that the contingencies will occur and that the controversy is a real one [is] decisive in determining whether an

actual controversy exists." GTE Directories Publ'g Corp. v. Trimen Am., Inc., 67 F.3d 1563, 1569 (11th Cir. 1995) (citation and internal quotation marks omitted).

Accordingly, because Plaintiffs have failed to allege any facts from which the Court could reasonably conclude that they will suffer future injury, the Court lacks jurisdiction to adjudicate their declaratory judgment claim.  See Malowny, 193 F.3d at 1346 (dismissing the claim for declaratory relief on the ground that plaintiffs lacked standing to assert the claim because they failed to allege they would suffer future injury, rather than on the ground that plaintiffs failed to state a claim); see also FW/PBS, Inc. v. City of Dallas, 493 U.S. 215, 231 (1990) ("The federal courts are under an independent obligation to examine their own jurisdiction, and standing 'is perhaps the most important of [the jurisdictional] doctrines.'"  (alteration in original) (citation omitted)).  Because the Court lacks subject matter jurisdiction over Plaintiffs' claim for declaratory judgment, Defendants' motion to dismiss Count 3 is granted.

### D.    Count 4: Attorneys' Fees and Costs

Defendants move to dismiss Count 4 of the Complaint, in which Plaintiffs assert that they are entitled to recover attorneys' fees and costs pursuant to O.C.G.A. § 13-6-11.   Defendants' sole argument that Plaintiffs' claim for attorneys' fees and costs must be dismissed is that, because "Plaintiffs have failed to state [a] claim under either their breach of contract or declaratory judgment counts," and their claim for attorneys' fees must be derivative of some other claim, Count 4 must be dismissed.  (Doc. 13, p. 11).  The Court has

determined that Plaintiffs have stated a claim for relief for breach of contract. Accordingly, Defendants' motion to dismiss Count 4 is denied.

### E.  Standing to Bring Suit Against Non-Issuing Defendants

Allstate Insurance Company, Allstate Fire & Casualty Insurance Company, and Allstate Property & Casualty Insurance Company (the "non-issuing Defendants") argue that they did not enter into an insurance contract with Plaintiffs, and therefore they cannot be liable for a breach of contract. (Doc. 13, p. 12). As a result, Defendants contend that Plaintiffs have no standing to seek injunctive or declaratory relief against the non-issuing Defendants. (Doc. 13, p. 12). Plaintiffs argue that their allegations are sufficient to establish that the non-issuing Defendants are properly named under the juridical link doctrine and theories of agency, apparent agency, joint venture, and/or alter ego. (Doc. 1, ¶¶ 15-26; Doc. 18, p. 24).

### 1.  Actual or Apparent Agency

The existence of a parent/subsidiary relationship does not in and of itself establish an agency relationship under Georgia law. Matson v. Noble Inv. Grp., LLC, 655 S.E.2d 275, 282 (Ga. Ct. App. 2007). "The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf." O.C.G.A. § 10-6-1.

> To prove actual agency, the purported principal must have assumed the right to control the method, manner, and time of the purported agent's work, as distinguished from the right merely to require

certain definite results in conformity to the contract.  The right to control the purported agent's time means the right to control the hours of work.  The right to control the method and manner of work means the right to tell the purported agent how to perform all details of the job, including the tools he should use and the procedures he should follow.

Satisfaction & Serv. Hous., Inc. v. SouthTrust Bank, Inc., 642 S.E.2d 364, 365 (Ga. Ct. App. 2007) (internal quotation marks and footnotes omitted).

Though Plaintiffs allege "Allstate Indemnity, Allstate Insurance, Allstate Fire & Casualty, and Allstate Property & Casualty are wholly owned subsidiaries of Allstate Insurance Holdings, LLC, . . . which in turn is a wholly owned subsidiary of The Allstate Corporation," they allege no facts regarding the level of control that any of the non-issuing Defendants exert over Allstate Indemnity. (Doc. 1, ¶ 15).   There are also no allegations about any express agency agreement or other facts to suggest Allstate Indemnity was the agent of any or all non-issuing Defendants, beyond a conclusory allegation that "at all relevant times herein, Defendants acted in all respects as agent, apparent agent, and alter ego for each other, with respect to the acts complained of herein."  (Doc. 1, ¶ 23). Therefore, Plaintiffs have not sufficiently alleged an actual agency relationship between Allstate Indemnity and the non-issuing Defendants.

The Morrows also assert a theory of apparent agency in their Complaint.  (Doc. 1, ¶ 23).

In order to recover under a theory of apparent or ostensible agency, a plaintiff must establish three elements: (1) that the alleged principal held out another as its agent; (2) that the plaintiff justifiably relied on the care or skill of the alleged agent based upon the alleged

principal's representation; and (3) that this justifiable reliance led to the injury.

Bright v. Sandstone Hospitality, LLC, 755 S.E.2d 899, 902 (Ga. Ct. App. 2014) (citation omitted).

There are no allegations that any of the non-issuing Defendants represented to the Morrows that they held Allstate Indemnity out as their agent. See Kids R Kids Int'l, Inc., v. Cope, 769 S.E.2d 616, 619 (Ga. Ct. App. 2015) ("To establish the required elements of apparent agency, it is not enough that the plaintiff *believe* that an agency relationship exists.  Neither is it sufficient that the *agent* represent his status as agent.  It must be established that the *principal* held out the agent as its agent." (internal quotation marks and footnote omitted)). Plaintiffs only allege that they "operate and trade under the common name of Allstate and use the same logo and slogan to identify and promote their business" and "maintain a common website," which provides a toll-free number homeowners can use to report a claim to Allstate.  (Doc. 1, ¶¶ 19–20).  However, the Georgia Court of Appeals has held that mere use of logos or trademarks is insufficient to show apparent agency.  See Kids R Kids Int'l, Inc., 769 S.E.2d at 619.  Further, the fact that Allstate Indemnity and the non-issuing Defendants share a website and toll-free telephone number does not show that any of the non-issuing Defendants held Allstate Indemnity out as its agent.  (Doc. 1, ¶¶ 19–20).

Even if these allegations were sufficient to show the non-issuing Defendants held Allstate Indemnity out as their agent, they do not plausibly suggest that Plaintiffs "justifiably relied on the care or skill of the alleged agent based upon the alleged principal's representation."  Bright, 755 S.E.2d at 902.

### 2.     Joint Venture

Plaintiffs seek to hold the non-issuing Defendants liable on the theory that they were part of a joint venture with Allstate Indemnity.  (Doc. 1, ¶ 24).

> The theory of joint venturers arises where two or more parties combine their property or labor, or both, in a joint undertaking for profit, with rights of mutual control (provided the arrangement does not establish a partnership), so as to render all joint venturers liable for the negligence of the other.

Kissun, 479 S.E.2d at 752.  Plaintiffs have not alleged that each Defendant exercises mutual control over any joint undertaking, and no other allegations in the complaint suggest mutual control.   See Williams v. Chick-fil-A, Inc., 617 S.E.2d 153, 155 (Ga. Ct. App. 2005) ("The right to exercise mutual control is a crucial part of a joint venture.").

### 3.     Alter Ego

Plaintiffs contend the non-issuing Defendants are liable for Allstate Indemnity's alleged breach of contract on an alter ego theory.  (Doc. 1, ¶ 23). "Under the alter ego doctrine, equitable principles are used to disregard the separate and distinct legal existence possessed by a corporation where it is established that the corporation served as a mere alter ego or business conduit of another."  Kissun v. Humana, Inc., 479 S.E.2d 751, 752 (Ga. 1997).  "[G]reat

caution should be exercised by the court," however.  Amason v. Whitehead, 367

S.E.2d 107, 108 (Ga. Ct. App. 1988).

> In order to disregard the corporate entity because a corporation is a
> mere alter ego or business conduit of a person, it should have been
> used as a subterfuge so that to observe it would work an injustice.
> To prevail based upon this theory it is necessary to show that the
> shareholders disregarded the corporate entity and made it a mere
> instrumentality for the transaction of their own affairs; that there is
> such unity of interest and ownership that the separate personalities
> of the corporation and the owners no longer exist.  The concept of
> piercing the corporate veil is applied in Georgia to remedy injustices
> which arise where a party has over extended his privilege in the use
> of a corporate entity in order to defeat justice, perpetuate fraud or to
> evade contractual or tort responsibility.

Baillie Lumber Co. v. Thompson, 612 S.E.2d 296, 299 (Ga. 2005) (citation

omitted).   Accordingly, Georgia courts disregard the corporate form if: (1) the

corporation is a "mere instrumentality" of the parent company or the

shareholders, and (2) to observe the corporate form would "work an injustice."

See Ralls Corp. v. Huerfano River Wind, LLC, 27 F. Supp. 3d 1303, 1328 (N.D.

Ga. 2014); Fla. Shade Tobacco Growers, Inc. v. Duncan, 256 S.E.2d 644, 644

(Ga. Ct. App. 1979).

However, as an equitable doctrine, piercing the corporate veil to hold a

parent company or shareholder liable "is appropriate[ ] … only in the absence of

adequate remedies at law."  Baillie Lumber Co., 612 S.E.2d at 299.  Thus, the

Georgia Supreme Court has held it is required, "as a precondition to a plaintiff's

piercing the corporate veil and holding individual shareholders liable on a

corporate claim, that there be insolvency on the part of the corporation in the

sense that there are insufficient corporate assets to satisfy the plaintiff's claim."
Johnson v. Lipton, 328 S.E.2d 533, 535 (Ga. 1985).  Absent an allegation of
insolvency or insufficient assets to satisfy a claim, a plaintiff fails to state a claim
for piercing the corporate veil to hold a parent company or shareholder liable.
See B & F Sys., Inc. v. LeBlanc, No. 7:07-CV-192 (HL), 2011 WL 4103576, at
*34 (M.D. Ga. Sept. 14, 2011); Friedman's, Inc. v. Morgan Schiff & Co. (In re
Friedman's), 385 B.R. 381, 414–15 (S.D. Ga. 2008), *vacated in part by* 396 B.R.
623 (S.D. Ga. 2008); Adams v. Unum Life Ins. Co. of Am., 508 F. Supp. 2d 1302,
1315 (N.D. Ga. 2007); Perry v. Unum Life Ins. Co. of Am., 353 F. Supp. 2d 1237,
1240 (N.D. Ga. 2005).

There is no allegation that Allstate Indemnity is insolvent or that it has
insufficient assets to satisfy Plaintiffs' claims.   It may be that as Plaintiffs
investigate their claims, they can allege facts to support their alter ego theory.
But the allegations Plaintiffs now make are insufficient.

### 4. Juridical Link Doctrine

Plaintiffs argue that the non-issuing Defendants are proper Defendants
pursuant to the "juridical link" doctrine.[4]  (Doc. 18, p. 24).  They allege that the
"Defendants' actions and relationships are sufficient to find that there is a juridical

---

[4] The non-issuing Defendants do not specifically address the juridical link
doctrine in their motion; in fact, their motion does not include Paragraph 26 in
their list of theories by which the non-issuing Defendants are not proper
defendants in this action.  (Doc. 13, p. 14).  However, they do include it in their
reply brief, so the Court will address this theory for the sake of completeness.
(Doc. 19, p. 9).

link among them." (Doc. 1, ¶ 26).  Plaintiffs, upon information and belief, believe that the non-issuing Defendants issue homeowners insurance policies which may have language similar to Allstate Indemnity's policy, and they suggest that Defendants may have "engaged in a common course of conduct pursuant to a common corporate policy with respect to those policies in terms of their failure to assess for and, where found, pay diminished value to their insureds."  (Doc. 1, ¶ 21).

The juridical link doctrine derives from the Ninth Circuit's decision in La Mar v. H & B Novelty & Loan Co., 489 F.2d 461 (9th Cir. 1973), where the court, in the context of a class action, explained in dicta:

> [A] plaintiff who has no cause of action against the defendant cannot fairly and adequately protect the interests of those who do have such causes of action.  This is true even though the plaintiff may have suffered an identical injury at the hands of a party other than the defendant and even though his attorney is excellent in every material respect.  Obviously this position does not embrace situations in which all injuries are the result of a conspiracy or concerted schemes between the defendants at whose hands the class suffered injury.  *Nor is it intended to apply in instances in which all defendants are juridically related in a manner that suggests a single resolution of the dispute would be expeditious.*

Id. at 466 (emphasis added).  Plaintiffs appear to rely on the language emphasized.[5]  Specifically, the non-issuing Defendants, they think, have a similar

---

[5] It seems obvious that in a properly alleged "conspiracy or concerted schemes between the defendants at whose hands the class suffered injury," there is no need to resort to some exotic doctrine to sue those defendants.  Clearly, if they acted together to cause the class an injury, they can be sued together.

policy which they interpret in the same way Allstate Indemnity interprets its policy, and thus it would be expeditious to join them in one action.

The Eleventh Circuit has not adopted the juridical link doctrine, but it has noted that cases applying the doctrine involved situations "in which there was either a contractual obligation among all defendants or a state or local statute requiring common action by the defendants." Moore v. Comfed Savs. Bank, 908 F.2d 834, 838 (11th Cir. 1990). Citing Moore and other cases, the Seventh Circuit has noted that "[p]ost-La Mar cases from other courts have suggested that if all the defendants took part in a similar scheme that was sustained either by a contract or conspiracy, or was mandated by a uniform state rule, it is appropriate to join as defendants even parties with whom the *named* class representative did not have direct contact." Payton v. Cty. of Kane, 308 F.3d 673, 679 (7th Cir. 2002) (citations omitted). Plaintiffs do not allege any contract, rule, or statute requiring common action among insurers issuing homeowners policies.

Moreover, as expeditious as it may be to join in one action the non-issuing Defendants and all other insurance companies[6] who take the position that their policy does not provide coverage for diminished value, expediency does not trump Article III's standing requirement. See Raines v. Byrd, 521 U.S. 811, 820 (1997) ("[W]e must put aside the natural urge to proceed directly to the merits of

---

[6] If the non-issuing Defendants can be joined simply because they interpret their policies to not provide coverage for diminished value, it would seem all insurers who deny claims for diminished value could be joined. Again, that would be expeditious, but it hardly comports with well-settled jurisdictional principles.

this important dispute and to 'settle' it for the sake of convenience and efficiency [when considering standing].''); <u>Lewis v. Casey</u>, 518 U.S. 343, 357 (1996) ("That a suit may be a class action ... adds nothing to the question of standing, for even named plaintiffs who represent a class 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'" (alteration in original) (citations omitted)).   Whatever utility the juridical link doctrine may have in the context of Rule 23 class action analysis, this Court is not prepared to say that it relieves the Morrows from pleading that they suffered injury at the hands of the non-issuing Defendants.  <u>See</u> <u>Mahon v. Ticor Title Ins. Co.</u>, 683 F.3d 59, 62–63 (2d Cir. 2012) (rejecting the plaintiff's juridical link doctrine arguments and affirming the district court's conclusion that the plaintiff "lack[ed] Article III standing to sue the [other wholly-owned subsidiaries of the same parent company as the codefendant] whether or not they are juridically linked to [the codefendant] because she suffered no injury as a result of their conduct"); <u>Cassese v. Wash. Mut., Inc.</u>, 262 F.R.D. 179, 184 (E.D.N.Y. 2009) (refusing to apply the juridical link doctrine and stating "even despite closely interconnected business entities, a class action plaintiff does not have standing to sue defendants for a breach of contract to which the plaintiff was not a party"); <u>Newport v. Dell, Inc.</u>, No. CV-08-00096, 2008 WL 4347017, at *3 (D. Ariz. Aug. 21, 2008) (noting the standing problem with the plaintiff's attempt to invoke the juridical link doctrine and concluding that the case, which

involved a breach-of-contract claim against a party with whom the plaintiff had no contract, was not similar to "the limited types of cases in which courts have actually applied the juridical link doctrine"); Popoola v. Md-Individual Practice Ass'n, Inc., 230 F.R.D. 424, 431–32 (D. Md. 2005) (rejecting the juridical link doctrine where the plaintiff asserted the defendants had a juridical link because they were "common subsidiaries of the same corporation and because they share common practices and policies" and concluding the plaintiff lacked standing to sue the defendant that was purportedly linked through the doctrine). Therefore, the non-issuing Defendants are not proper defendants pursuant to this doctrine.

Accordingly, Defendants' motion to dismiss the non-issuing Defendants is granted.

## III.   CONCLUSION

For the reasons discussed herein, Defendants' motion to dismiss is **GRANTED in part** and **DENIED in part**.  Count 3 of the Complaint, in which Plaintiffs seek a declaratory judgment, is dismissed.  The non-issuing Defendants are dismissed from this lawsuit.  To the extent Plaintiffs seek relief under Count 1 and Count 2 for the foundational and/or structural support damage they experienced in 2010, the Court will allow Plaintiffs twenty-one (21) days from the date of this Order to file an amended complaint containing allegations sufficient to survive Defendants' Motion to Dismiss.  If an amended complaint is not filed, Plaintiffs' breach of contract claims based on the 2010 loss will be dismissed.  All

other claims against Allstate Indemnity may proceed for further factual development.

SO **ORDERED**, this the 29th day of March, 2017.

/s/ Hugh Lawson
**HUGH LAWSON, SENIOR JUDGE**

les