**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| BARBARA MORROW and BENNY MORROW, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INDEMNITY COMPANY,<br><br>Defendant. | Civil Action No. 5:16-cv-00137-HL |

**DEFENDANT ALLSTATE INDEMNITY COMPANY'S MEMORANDUM OF LAW IN OPPOSITION OF PLAINTIFFS' MOTION TO EXCLUDE DEFENDANT'S EXPERT JENNIFER N. PITTS, CRE**

Defendant Allstate Indemnity Company ("Allstate") files this memorandum of law in opposition of Plaintiffs' Motion to Exclude Defendant's Expert Jennifer N. Pitts, CRE, and states as follows.

## MEMORANDUM OF LAW

### I. INTRODUCTION

Plaintiffs' Motion to Exclude Allstate's expert Jennifer Pitts is a thinly-veiled attempt to silence Ms. Pitts' well-founded criticisms of Plaintiffs' experts. Despite Plaintiffs' argument that Ms. Pitts' opinions are inadmissible *ipse dixit*, an analysis of Plaintiffs' Motion makes clear that Ms. Pitts' opinions—unlike those of Plaintiffs' experts—are well supported by her professional experience and by generally accepted literature, methodology and standards in the field of real estate valuation. Indeed, a significant portion of Ms. Pitts' expert analysis challenges the lack of methodological or data-based support for the wholly unsupported opinions put forth by Plaintiffs' own experts.

As Ms. Pitts points out in her report and her testimony, Plaintiffs' experts Mr. Murphy and Dr. Kilpatrick proffer bald and unsubstantiated assertions that are unsupported by relevant or reliable data. But the say-so of Dr. Kilpatrick and Mr. Murphy does not make their assertions true, nor does it shift the burden to the Defendants to come up with the kind of data that Plaintiffs' own opinions lack. Ms. Pitts is eminently qualified to testify regarding the holes and deficiencies in Plaintiffs' research and conclusions, as well as the lack of acceptance in the field for their curious methodologies and thumb-on-the-scale "surveys" that underlie their highly questionable conclusions.

As detailed below, Ms. Pitts has ample professional experience to qualify her as an expert in this matter. And unlike Dr. Kilpatrick and Mr. Murphy, Ms. Pitts' opinions are supported by the relevant standards and practices of the appraisal industry.

Based on the above, and set forth in detail below, Ms. Pitts' opinions survive Plaintiffs' *Daubert* challenge and should be admitted.

## II. MS. PITTS' QUALIFICATIONS AND OPINIONS

Ms. Pitts holds a Bachelor's degree in Finance and a Master's Degree in Land Economics and Real Estate. She is a Counselor of Real Estate (CRE) with more than 13 years' experience determining the impacts of detrimental conditions on thousands of single-family residential properties throughout the United States and Canada stemming from a range of potentially detrimental conditions. (Exhibit A, Declaration of Jennifer Pitts ("Pitts Decl.") ¶ 3; DE 53-3, Report of Jennifer Pitts ("Pitts Report") ¶¶ 1-2;.) She also has years of experience developing and applying each of the specialized valuation methods that are generally recognized in appraisal guidance and literature as the appropriate methods for determining any impacts of detrimental conditions on residential property values. (Exhibit A, Pitts Decl. ¶ 6.)

As part of her work as a real estate consultant, Ms. Pitts has assisted in analyzing data and preparing reports in a litigation context. In 2015, Ms. Pitts assisted her colleague Thomas Jackson in preparing an expert report on behalf of State Farm Fire and Casualty Company in the matter of *Thompson v. State Farm Fire and Casualty Co.*, No. 5:14-cv-00032-MTT (M.D. Ga.) ("Thompson"). (Exhibit A, Pitts Decl. ¶ 4.) *Thompson* involved similar claims as those in this matter, alleging that State Farm failed to assess and pay for diminution in value following covered water losses.

Ms. Pitts was hired by Allstate in this matter to review the opinions of Plaintiffs' experts Dr. John Kilpatrick and Mr. Scott Murphy and opine on the suitability and reliability of those opinions. (DE 52-15, Deposition of Jennifer Pitts ("Pitts Dep.") at 83:23-84:4.) She offers four opinions in this case based on her professional experience and review of data and relevant literature. First, Ms. Pitts opines that the Named Plaintiffs' claims are not typical or representative of the claims of the Proposed Class. (DE 53-3, Pitts Report at ¶ 8.) This opinion is fully supported by the claims data provided by Allstate, which shows a wide variety in the type and magnitude of claims of potential class members as well as the location throughout the state of Georgia of potential class members. Ms. Pitts also relied on data published by the Gordon County Tax Assessor to determine the variances within the Named Plaintiffs' own county.

Ms. Pitts also opines that Plaintiffs' experts lack any empirical or other relevant evidence to support their conclusions that every loss in the Proposed Class has the potential for diminished value. She explains that Dr. Kilpatrick's opinion is unreliable because "he has failed to analyze actual market data (sales transactions)" and "fail[ed] to address the heterogeneity of properties and claims present within the Proposed Class." (DE 53-3, Pitts Report ¶ 60.) Similarly, she opines that Scott Murphy's opinion is unsupported as "[t]he data he presents fails to provide a basis for

drawing any meaningful conclusions regarding the potential for property value diminution at each individual property within the Proposed Class." (*Id.* ¶ 100.) These criticisms are supported by a review of the literature and studies presented in Dr. Kilpatrick's and Mr. Murphy's Reports, Ms. Pitts' familiarity with the standards and practices of the appraisal profession and the need for data-based analysis to support conclusions regarding real estate valuation, and the absence of any relevant data supporting Plaintiffs' experts' sweeping conclusion.

Lastly, Ms. Pitts opines that "[i]f an assessment of diminution in value is required, then the scope of work required for each individual assessment will vary based on the nature and extent of the covered loss and the unique physical and locational attributes of each individual property." (DE 53-3, Pitts Report ¶ 28.) Contrary to Plaintiffs' assertion that this opinion is unfounded and speculative, Ms. Pitts' experience as a real estate appraiser confirms that certain types of losses do not have the potential for diminished value and will not require a diminished value assessment, and even if an assessment is required, the scope of the work for the assessment will depend on individual characteristics of each property. This opinion is also supported by the professional literature, including articles cited by Plaintiffs' own expert, Dr. Kilpatrick.

## III. LEGAL STANDARD

In determining whether expert testimony is admissible, the trial court must consider whether

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.

*United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir. 1998). "Once an expert opinion has satisfied

*Daubert*, a court may not exclude the opinion simply because it believes that the opinion is not—in its view—particularly strong or persuasive. The weight to be given to admissible expert testimony is a matter for the jury." *Seamon v. Remington Arms Co*., 813 F.3d 983, 990 (11th Cir. 2016).

## IV. ARGUMENT

### A. Ms. Pitts' Opinion 1 is Supported by Data.

Plaintiffs' Motion takes issue with Ms. Pitts' first opinion regarding the typicality, or lack thereof, of Named Plaintiffs' claims, claiming that "Ms. Pitts has done no study of any class property or its corresponding insurance claim to determine its similarity or dissimilarity to the Morrow's property and insurance loss[.]" (DE 53-1, Plaintiffs' Motion to Exclude Testimony of Jennifer Pitts ("Motion") at 5.) This statement blatantly ignores Ms. Pitts' Report and testimony which confirm that her Opinion 1 is supported by ample data.

First, Ms. Pitts reviewed the claims data provided by Allstate listing the location of and amount of covered water and fire losses throughout the state of Georgia between 2014 and 2016. (DE 53-3, Pitts Report ¶ 3(m).) Based on this claims information, Ms. Pitts was able to determine that the cost to repair the Morrows' two covered losses "is not typical or representative of the damages experienced by homeowners throughout the Proposed Class, whose claims range from significantly lower than those of Named Plaintiffs to significantly higher than those of Named Plaintiffs." (*Id.* ¶ 17.) Further, based on the zip code information in the claims data, Ms. Pitts was able to conclude that the Proposed Class contains "numerous and diverse local real estate markets" and that the Morrows' suburban home is not typical of these various markets. (*Id.* ¶ 24.) This conclusion is supported by the authoritative industry text, which provides that "[t]he boundaries of market areas, neighborhoods, and districts identify the areas that influence a subject property's

value." Appraisal Institute, The Appraisal of Real Estate 165 (14th ed. 2013) (attached hereto as Exhibit B).

Ms. Pitts also reviewed property records published by the Gordon County Tax Assessor. (DE 53-3, Pitts Report ¶ 3(k).) The property characteristics in this one county alone show that no one property can be typical of all properties in the Proposed Class, as homes vary greatly in characteristics such as square footage, lot size, year constructed and assessed value. (*Id.* ¶ 23; DE 52-15, Pitts Dep., at 223:5-224:7.) Given that the Proposed Class is statewide, the differences among properties will only be amplified, and thus whether or not the Morrows' home suffered diminution in value says nothing of the other class properties.

Plaintiffs fail to explain why these types of data reviewed by Ms. Pitts are insufficient to support her opinion. Plaintiffs argue that "[t]he claims list Ms. Pitts reviewed did not indicate the condition of the properties, the value of the properties, anything about the characteristics of the properties, or anything about the claim or damage other than the peril code and amount paid on the claim." (DE 53-1, Motion, at 8.) While that may arguably go to the weight of Ms. Pitts' opinion, the fact is that her review of two years' worth of fire and water claim data, her research into the various property locations and her review of the Assessor's records constitutes far more analysis than any performed by Plaintiffs' experts regarding the proposed class. Nothing in Plaintiffs' submissions suggests that the data relied upon by Ms. Pitts was unreliable, or that it was not the type of data that an expert in the field of real estate valuation would ordinarily rely on. Moreover, other than positing that Ms. Pitts did not take a deeper dive into the claims data, Plaintiffs do not suggest that this additional information would contradict the data that she did review, or lead one to a different conclusion than Ms. Pitts reached. Be that as it may, the data reviewed by Ms. Pitts is more than sufficient to support her conclusion that the Morrows' property

is not representative or typical of the properties in the Proposed Class. Any alleged deficiency in the evidence considered by Ms. Pitts goes to the weight and not the admissibility. *See Vision I Homeowners Ass'n, v. Aspen Specialty Ins. Co*., 674 F. Supp. 2d 1321, 1325 (S.D. Fla. 2009); *see also Tillman v. C.R. Bard, Inc.*, 96 F. Supp. 3d 1307, 1332 (M.D. Fla. 2015) (holding that "arguments concerning the weaknesses of the underlying [ ] data go to the weight rather than the admissibility of the opinion.").

At Ms. Pitts' deposition, Plaintiffs' counsel spent considerable time questioning Ms. Pitts about her work on a litigation matter in Montana. That litigation was brought by 80 homeowners alleging diminished value based on environmental contamination from copper mining and smelting operations. Ms. Pitts testified that she found zero percent diminished value for each of the 80 properties. In their Motion, Plaintiffs misleadingly argue that this Montana case therefore proves that diminished value can be calculated uniformly across multiple properties. (*See* DE 53-1, Motion, at 8 fn.3.) What Plaintiffs fail to mention is that all 80 properties in the Montana litigation suffered the same type of peril (environmental contamination), emanating from the same source at the same time, and were located in the same market area. (DE 52-15, Pitts Dep. at 58:25-60:3.) The Montana case in is no way comparable to the Proposed Class here, which involves four different perils—water loss, mold damage, fire damage and foundational and/or structural damage—suffered by homeowners across the entire state of Georgia over an alleged 8-year period. Ms. Pitts' testimony on the Montana matter is in no way inconsistent with her proffered opinions here.

### B. Ms. Pitts' Criticisms of Plaintiffs' Experts Are Well-Founded.

#### i. Ms. Pitts' Criticisms of Plaintiffs' Experts' Methodologies are Well Supported.

The heart of Ms. Pitts' opinion is that Plaintiffs' experts Dr. Kilpatrick and Mr. Murphy have improperly concluded that every loss in the Proposed Class has the potential for diminished value because the conclusion lacks supporting data and is the product of improper and/or inappropriate methodologies. Specifically, Ms. Pitts criticizes both Dr. Kilpatrick and Mr. Murphy for failing to consider market data (actual transactions) when concluding that all properties in the Proposed Class have the potential for diminished value. (DE 53-3, Pitts Report ¶¶ 60, 104.) Plaintiffs' Motion in turn argues that Ms. Pitts' opinion in this regard is devoid of any support. (DE 53-1, Motion, at 18.) This argument is clearly contradicted by the substance of Ms. Pitts' Report.

First, Ms. Pitts' Report cites to Advisory Opinion 9 which states that "[t]he analysis of the effects of increased environmental risk and uncertainty on property value (environmental stigma)[1] must be based on market data, rather than unsupported opinion or judgment." (DE 53-3, Pitts Report ¶ 63 (quoting Advisory Opinion 9).) Additionally, Ms. Pitts' Report cites to The Appraisal of Real Estate (14th Ed.) as "the authoritative textbook for real estate appraisers" which contains "guidance on appropriate appraisal methodology." (*Id*. ¶ 61, fn.31.) That text provides that "[a]ll of the [well established and generally recognized and accepted] techniques require consideration of ***market data*** in arriving at the impaired values." Exhibit B, Appraisal Institute, The Appraisal of Real Estate 216 (14th ed. 2013) (emphasis added). The text adds that "relying on published articles as a basis for a value opinion ***is not a recognized appraisal technique*** in the absence of independent investigation and verification of the accuracy of the market data and conclusions."

[1] Both Dr. Kilpatrick and Mr. Murphy agree that AO-9 is applicable to other types of detrimental conditions. (DE 52-26, Kilpatrick Report ¶ 52 ("[A]lthough AO-9 focuses on environmental contamination, it nevertheless provides the appropriate framework for measuring diminution in value more generally."); DE 52-11, Murphy Report, at 4 (stating that AO-9 "is generally applicable to most detrimental conditions").)

*Id*. at 214-215 (emphasis added). Further, while "[i]nformal or formal surveys of buyers, sellers, lenders, brokers, appraisers, and others involved in actual sales of property" may be useful, survey research is not a recognized technique in The Appraisal of Real Estate. *Id*. at 215.

Contrary to Plaintiffs' assertions (DE 53-1, Motion, at 19), Ms. Pitts' conclusions regarding Dr. Kilpatrick's and Mr. Murphy's inappropriate reliance on surveys are also supported by Dr. Randall Bell. Plaintiffs cite to Dr. Bell for the proposition that surveys may be used "where there is a dearth of transactional data." (*Id*.)[2] But Plaintiffs conspicuously leave out the part of Dr. Bell's book that says "a survey should not be the sole method used when relevant market data is available. In other words, prior to relying solely upon a survey method, an analyst should make a full search for relevant transactional data and exhaust other alternatives."[3] Randall Bell, PhD, MAI, *Real Estate Damages*, at 53 (3d ed. 2016) (attached hereto as Exhibit C). According to Dr. Bell,

> The most important consideration in evaluating potential risk, stigma, or market resistance is to support opinions with ***relevant market data.*** The discovery or disclosure of a current or prior detrimental condition does not automatically result in value diminution, and it is incumbent upon the appraiser or analyst to provide proper support for any opinions related to market resistance.

*Id*., at 27 (emphasis added); *see also id*., at 1 ("A property is considered 'innocent' until a negative impact is demonstrated through an analysis of relevant market data. The simple assumption that an incident caused a diminution in value is one of the most common errors in the field.").

---

[2] Plaintiffs' citations to the testimony of Allstate's expert Carl Schultz on the use of surveys is misleading. (DE 53-1, Motion, at 19-20). Mr. Schultz did not testify that surveys, standing-alone, can be used to measure diminution in value.

[3] Plaintiffs ignore the fact that Dr. Kilpatrick did not even bother to look for market data in forming his opinions. *See* Defendant's Memorandum of Law in Support of its Motion to Exclude Expert Opinions of Dr. John A. Kilpatrick (DE 50-1) at 11-12 (citing (DE 50-2) Kilpatrick Dep. at 125:17 - 127:21).

Further, in Ms. Pitts' professional experience, an appraiser conducting an appraisal of a single-family residential property in the ordinary course would rely on relevant market data (sales transactions from the appropriate market area) to determine the value of the property or any potential impacts to value. The appraiser would not rely on survey data or market interviews to the exclusion of actual market data. (Exhibit A, Pitts Decl. ¶ 11.) Both Dr. Kilpatrick and Mr. Murphy clearly violated this standard practice, as outlined in Ms. Pitts' Report.

Even though Dr. Kilpatrick's and Mr. Murphy's opinions regarding the potential for diminished value are not calculations of the amount of diminished value for any specific property, the evidence in support of their opinions should be based on relevant market data in accordance with generally accepted techniques for real estate appraisers. (Exhibit A, Pitts Decl. ¶ 13.) Advisory Opinion 21 states that a person should comply with the Uniform Standards of Professional Appraisal Practice (USPAP)[4] "any time that individual represents that he or she is performing the service as an appraiser." Appraisal Standards Board of the Appraisal Foundation, USPAP Advisory Opinions, at 140 (2016-2017 ed.) (attached hereto as Exhibit D). Further, the Advisory Opinion defines "valuation services" as "services pertaining to aspects of property value." *Id.*, at 141. "Appraisal practice" is defined as "valuation services performed by an individual acting as an appraiser" and is governed by USPAP obligations. *Id.* Dr. Kilpatrick and Mr. Murphy cannot escape the conclusion that their opinions about the market value effects of certain property conditions are valuation services being performed by appraisers and must comply with USPAP.

Lastly, Plaintiffs' additional argument that Mr. Murphy "uses his survey in conjunction with a paired sales analysis to support his opinions about the impaired value of the Morrow

[4] USPAP sets forth the ethical and procedural standards for real estate appraisers, while The Appraisal of Real Estate sets forth the recognized valuation methods.

property" (DE 53-1, Motion, at 18-19) mischaracterizes Mr. Murphy's Report and testimony. Murphy did not identify a paired sale until ***after*** his report was completed (DE 52-13, Murphy Dep., at 106:9-12) and thus admitted that the transaction did not form the basis for his appraisal opinion (*id.*, at 120:16-20). Because his paired sales analysis did not influence his valuation opinion, Ms. Pitts' criticism of Mr. Murphy's opinion is well-founded.

**ii. Ms. Pitts' Opinions are Appropriate Rebuttal Testimony.**

Ms. Pitts' opinions are appropriate rebuttal testimony, and no rule requires a rebuttal expert to produce evidence proving the opposing expert incorrect. Federal Rule of Civil Procedure 26 allows for the designation of an expert "intended solely to contradict or rebut evidence on the same subject matter identified by another party[.]" F.R.C.P. 26(a)(1)(D)(ii). "The task of a rebuttal expert is different from that of an affirmative expert. A rebuttal expert, by definition, criticizes or rebuts the methodology and opinions of another expert." *Navelski v. Int'l Paper Co*., 244 F. Supp. 3d 1275, 1302 (N.D. Fla.), *reconsideration denied*, 261 F. Supp. 3d 1212 (N.D. Fla. 2017) (citation omitted). Courts routinely find such rebuttal testimony appropriate and helpful to the jury. *See Wreal, LLC v. Amazon.com, Inc*., No. 14-21385-CIV-LENARD/GOODMAN, 2016 WL 8793317, at *16 (S.D. Fla. Jan. 7, 2016) (finding that "the jury would benefit from a rebuttal expert" and expert's "critiques of the technical aspects of the survey will assist the trier of fact in determining the weight, if any, to give to" opposing party's survey); *In re Steffen v. Turner*, 342 B.R. 861, 871 (Bankr. M.D. Fla. 2006) (holding that critique of opposing party's expert was proper basis for expert testimony). In a similar case, *Anderson v. Am. Family Ins. Co.,* this Court, in commenting on the *Thompson* matter, noted the "obvious *Daubert* issues" inherent in Dr. Kilpatrick's methodology, and made clear that the insurer "could introduce evidence of the circumstances of particular losses to demonstrate that generalized surveys did not reliably establish stigma or, even if they did, did not reliably quantify the allegedly resulting diminished value." No. 5:15-CV-475

(MTT), 2018 WL 4976805, at *2 (M.D. Ga. Oct. 15, 2018) (citation omitted), *appeal filed*, No. 18-14772 (11th Cir. Nov. 15, 2018). That is exactly the type of evidence Allstate appropriately offers through Ms. Pitts.

Further, despite Plaintiffs' attempt to shift the burden of proof to Allstate and Ms. Pitts, "[t]here is no requirement that a rebuttal expert offer a competing damages analysis, for example; his opinions properly may be limited to criticizing the analysis and conclusions presented by another party." *Navelski*, 244 F. Supp. 3d at 1302 (finding rebuttal expert's lack of "stand-alone appraisal or opinion" "entirely appropriate"); *see also Wreal, LLC*, 2016 WL 8793317, at *16 (recognizing that rebuttal expert's failure to conduct his own survey was not a reason for exclusion).

**iii. Ms. Pitts Has Extensive Experience Valuing Property and Calculating Diminution in Value.**

Plaintiffs' criticisms of Ms. Pitts' experience are unfounded and misapply the relevant legal standards. "A witness who possesses general knowledge of a subject may qualify as an expert despite lacking specialized training or experience, so long as his testimony would likely assist a trier of fact." *Whelan v. Royal Caribbean Cruises Ltd.*, 976 F. Supp. 2d 1328, 1331 (S.D. Fla. 2013). Ms. Pitts' extensive experience and training more than meets that standard.

In Ms. Pitts' more than 13 years of experience determining the impacts of detrimental conditions on thousands of single-family residential properties throughout the United States and Canada stemming from a range of potentially detrimental conditions. (Exhibit A, Pitts Decl. ¶ 3.) She also has years of experience developing and applying each of the specialized valuation methods that are generally recognized in appraisal guidance and literature as the appropriate methods for determining any impacts of detrimental conditions on residential property values. (*Id.* ¶ 6.) Further, Ms. Pitts worked extensively on the *Thompson* matter, which involved nearly

identical allegations. (*Id*. ¶ 4.) The fact that this is Ms. Pitts' first-time serving as the testifying expert, (in contrast to Plaintiffs' line-up of professional witnesses), is irrelevant. "Every expert found to be qualified by a court must be so designated a first time." *Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 662 (S.D. Fla. 2012).

Aside from attacking Ms. Pitts' qualifications, Plaintiffs' Motion misinterprets the import of her testimony. Ms. Pitts' opinion is that Mr. Murphy's and Dr. Kilpatrick's blanket assertions that every property suffering a homeowner's loss carries the potential for diminished value, no matter how minor or how easily or fully repairable the damage may be, are unsupported by the data. (*See* DE 53-3, Pitts' Report ¶ 60 ("The evidence [Dr. Kilpatrick] presents is insufficient to support his conclusion that every property, regardless of its individual characteristics, would have the potential for diminution in value."); *id*. ¶ 100 ("Murphy's opinion that every Proposed Class area property has the potential for post-repair diminution in value is unsupported and speculative.").) This opinion is amply supported in her Report. The ***absence*** of any study or data supporting Mr. Murphy's and Dr. Kilpatrick's opinion is in itself support for Ms. Pitts' opinion.[5]

Plaintiffs' statement that Ms. Pitts "conceded at deposition that [Dr. Kilpatrick's and Mr. Murphy's] conclusions about diminished value are correct" (DE 53-1, Motion, at 15) could not be further from the truth and demonstrates a fundamental misunderstanding of the parties' dispute. Ms. Pitts' testimony that water damage, mold damage, fire damage and structural and/or foundation damage ***can*** cause the potential for diminished value is a far cry from Kilpatrick's and Murphy's assertions that such damage ***necessarily*** presents the potential in each and every case.

---

[5] *See* Defendant's Memorandum of Law in Support of its Motion to Exclude Expert Opinions of Dr. John A. Kilpatrick (DE 50-1) at 12-15 (explaining why Dr. Kilpatrick's opinions are not supported by literature or case studies); *see also* Defendant's Memorandum of Law in Support of its Motion to Exclude Expert Opinions of Scott Murphy (DE 49-1) at 8-10 (noting the absence of support for Mr. Murphy's opinions).

Further, her testimony that she "cannot rule out the existence of diminished value" without doing an analysis was referring to any specific *class* property. (DE 52-15, Pitts Dep., at 88:22-25.) As she clearly stated in her Report, Ms. Pitts has determined that there are certain types of losses for which a diminution in value assessment is not required (DE 53-3, Pitts Report ¶¶ 34-36), contrary to the opinions of Plaintiffs' experts.

**iv. Ms. Pitts' Opinions are Consistent with Relevant Authorities.**

Plaintiffs argue that Ms. Pitts' opinions are inconsistent with several different sources within the real estate appraisal industry. As shown below, that contention has no merit. Yet, even if there were relevant and reliable sources contradicting Ms. Pitts, that "would go to the weight of the evidence, rather than to its admissibility." *Se. Metals Mfg. Co. v. Fla. Metal Prods., Inc.*, 778 F. Supp. 2d 1341, 1345 (M.D. Fla. 2011) (citation omitted). As long as "a logical basis for admitting the testimony has been established," which it has here, alleged "weaknesses in the underpinnings of the expert's opinion go to its weight rather than its admissibility." *Vision I Homeowners Ass'n*, 674 F. Supp. 2d at 1325 (citation omitted).

Plaintiffs place undue emphasis on the prior testimony of Trevor Phillips in the *Thompson* matter. Mr. Phillips is an independent contractor for Ms. Pitts' consulting firm, and he assisted Ms. Pitts in the preparation of her Report in this matter. In *Thompson*, based on his analysis of a particular property in a specific case, Mr. Phillips testified that mold damage could result in diminished value to a home. He also testified that interior water leaks have the potential to cause diminished value. Plaintiffs' attempt to twist this testimony to support their conclusion that ***every*** instance of mold or water damage has the potential for diminished value. Mr. Phillips said no such thing. As Ms. Pitts' explained, Mr. Phillips' analysis was based on individual circumstances and characteristics and that "there may be a small slice of the proposed class area that that could be

applicable to, but those individual characteristics must come into play when making that determination." (DE 52-15, Pitts Dep., at 236:18 - 237:5.)

Plaintiffs also attempt to pit Ms. Pitts against Allstate's other expert, Carl Schultz. Plaintiffs argue that Mr. Schultz "testified that the types of losses at issue in this case *can* result in diminished value." (DE 53-1, Motion, at 16; emphasis in original.) In fact, contrary to Plaintiffs' argument, Mr. Schultz did not agree that "in every case where there's been a water intrusion, that you've got to have an appraisal." (DE 52-14, Deposition of Carl Schultz, at 19:17- 20:1; 21:18-22.) Thus, Ms. Pitts' opinion is entirely consistent with Mr. Schultz—both agree that an appraisal is not always required.

Further, the book by Dr. Bell referenced by Plaintiffs in their Motion does not contradict Ms. Pitts' opinion. As Ms. Pitts explained at her deposition, Dr. Bell's book refers to pre-repair diminution in value. (*See* DE 52-15, Pitts Dep., at 191:10 - 192:5.) In his discussion of Building and Manufacturing Conditions, which many of the perils at issue here would fall under, Dr. Bell acknowledges that "[o]ften the full value of the property is restored upon completion of repairs." Exhibit C, Randall Bell, PhD, MAI, *Real Estate Damages* at 173 (3d ed. 2016).[6] Because Ms. Pitts focuses on post-repair diminished value, her opinion is entirely consistent with Dr. Bell's literature. The opinions proffered by Plaintiffs' experts, however, are not.

### B. Ms. Pitts' Opinion that the Potential for Diminished Value is an Individual Inquiry is Supported by Her Professional Experience and the Relevant Literature.

Ms. Pitts' second opinion is that—in contrast to Plaintiffs' experts' unsupported claim of universal potential for diminution in value—not every property carries the potential for diminution

[6] *See also id.* ("If the damages cannot be fully repaired economically, there may be an ongoing condition that results in diminution in value, if this supported by the market.").

in value which would require a diminished value assessment, and that in circumstances where an assessment of diminution in value is required, the scope of work required for each individual assessment will vary based on the nature and extent of the covered loss and the unique physical and locational attributes of each individual property. (DE 53-3, Pitts Report ¶ 28.)[7] This opinion is amply supported by both the relevant literature and her extensive experience.

The categories set forth in Ms. Pitts' Report that do not have the potential for diminished value and would not require a diminished value assessment (*id*. ¶ 34) are supported by the relevant literature. As Ms. Pitts testified at her deposition, an article written by Michael Sanders and cited by Dr. Kilpatrick concludes that "minor damage once repaired would not have the potential to impact property values." (DE 52-15, Pitts Dep., at 96:24-97:8.) The Sanders article referenced by Ms. Pitts states that

> Residual loss in value is clearly affected by the ***nature and severity*** of the underlying problem. For example, ***a leaking roof or similar patent defect would probably not result in a value loss other than the cost of repairs***, while a severe landslide that requires foundation replacement might result in a significant loss over and above simple repair cost.

Michael V. Sanders, MAI, SRA, *Post-Repair Diminution in Value from Geotechnical Problems*, The Appraisal Journal, at 63 (Jan. 1996) (emphasis added) (attached hereto as Exhibit E). Ms. Pitts also cited to Dr. Randall Bell's work (DE 52-15, Pitts Dep., at 98:3-9), which provides that "construction issues above grade . . . are relatively easy to assess, and often result in the restoration of the property's full value upon completion of the repairs." Randall Bell, MAI, *The Impact of Detrimental Conditions on Property Values*, The Appraisal Journal, at 385 (Oct. 1998) (attached hereto as Exhibit F). Ms. Pitts' opinion that not all losses carry the potential for diminished value

---

[7] *See also* DE 52-15, Pitts Dep., at 136:5-9 ("I have looked at the literature. And in my own appraisal experience, it is an individual inquiry, and one circumstance of diminished value would not be applicable on a uniform broad basis to every property in the proposed class.").

is therefore supported by industry literature, including literature relied on by Plaintiffs' own experts. Just because Plaintiffs do not agree with Ms. Pitts' conclusion does not render her conclusion unreliable or inadmissible. *See Waite v. AII Acquisition Corp*., 194 F. Supp. 3d 1298, 1309 (S.D. Fla. 2016) (holding that the "merits of the evidence" upon which an expert relies "are the classic sorts of challenges for which *Daubert* instructs that vigorous cross-examination is the proper remedy."); *see also Feliciano v. City of Miami Beach*, 844 F. Supp. 2d 1258, 1263-64 (S.D. Fla. 2012) ("Reliability is different than believability or persuasiveness, which remains an issue for the trier of fact.").

Ms. Pitts' opinion is also supported by her experience as a real estate appraiser and the general practice of real estate appraisers. According to Ms. Pitts, nothing in the national standards or guidance for licensed or certified real estate appraisers requires that an appraiser assess for diminished value to a property based on an ordinary, routine homeowners loss which has been fully repaired in a workman-like manner. (Exhibit A, Pitts Decl. ¶ 8.) In fact, based on her experience as a certified real estate appraiser, outside the context of significant environmental damage, diminution in value to a residential property as a result of damage that has been repaired or remediated is rare. (*Id*. ¶ 9.) In Ms. Pitts' experience reviewing hundreds of single-family residential appraisals of homes throughout the United States, she has never seen an appraiser, in the ordinary course of conducting an appraisal of a single-family home, make a reduction to the value of a home based on an ordinary, routine homeowners loss which has been fully repaired in a workman-like manner. (*Id*.)

Ms. Pitts appropriately relied on her professional experience in forming her opinions. "A district court may decide that nonscientific expert testimony is reliable based 'upon personal knowledge or experience.'" *Am. Gen. Life Ins. Co. v. Schoenthal Family, LLC*, 555 F.3d 1331,

1338 (11th Cir. 2009) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 151 (1999)). Courts in the Eleventh Circuit routinely admit expert testimony based on the expert's professional experience. *See Anderson v. Mascara*, No. 2:17-CV-14369-ROSENBERG/MAYNARD, 2018 WL 4932092, at *10 (S.D. Fla. Oct. 11, 2018) (admitting expert's opinion based "on his experience working in law enforcement, his knowledge of proper law enforcement practices and procedures, and his review of records and interviews associated with this case."); *see also Clena Invs., Inc.*, 280 F.R.D. at 664 (admitting opinion based on training and experience, finding that "as a professional engineer" expert understands the subject in a way "that an untrained person would not").

The second half of Ms. Pitts' opinion—that the scope of work for a diminished value assessment will vary and may or may not require a full appraisal (DE 53-3, Pitts Report ¶ 33)—is similarly supported. First, the guiding text for real estate appraisers, The Appraisal of Real Estate, states that

> [s]cope of work encompasses all aspects of the valuation process, including which approaches to value will be used; how much data is to be gathered, from what sources, from which geographic area, and over what time period; the extent of the data verification process; and the extent of property inspection, if any.

Exhibit B, Appraisal Institute, The Appraisal of Real Estate 39 (14th ed. 2013). Pursuant to industry standards, if an appraisal is required, different valuation methods could be chosen based upon the unique characteristics of a specific property or claim, and the scope and time required for each method and each specific valuation would be different. An expert can permissibly rely on industry standards for the basis of her opinion. *See Camacho v. Nationwide Mut. Ins. Co.*, 13 F. Supp. 3d 1343, 1369 (N.D. Ga. 2014) (admitting expert opinion based on expert's "knowledge, experience, and reliance on [ ] industry standards. . .").

Additionally, Plaintiffs' expert Mr. Murphy agrees that the scope of work will vary based upon individual property and claim characteristics. He states in his Expert Report that "[t]he time involved with completing a reliable report can vary," and "[f]actors which can increase the price above these rates include the complexity of the property in terms of size, amenities, lot size and location. Fees are generally based on the appraiser's estimated time required to complete the report. There generally are no set fees for any type of appraisal." (*See* DE 52-11, Murphy Report, at 8) In fact, Mr. Murphy explicitly states that "[t]he scope of work for each appraisal may vary[.]" (DE 52-12, Murphy Response Report, at 7.) Given that their own expert agrees with Ms. Pitts, Plaintiffs have no grounds to object to this portion of Ms. Pitts' opinion.

**C. CONCLUSION**

Based on the foregoing, Allstate requests that this Court deny Plaintiffs' Motion to Exclude the Expert Testimony of Jennifer Pitts and allow Ms. Pitts to testify consistent with her August 12, 2018 Report and November 8, 2018 deposition.

Respectfully submitted,

This 9th day of January 2019.

*<u>/s/ Jeffrey A. Zachman</u>*
Nathan L. Garroway, Ga. Bar No. 142194
Jeffrey A. Zachman, Ga. Bar No. 254916
DENTONS US LLP
303 Peachtree Street, NE. Suite 5300
Atlanta, GA 30308
Telephone: (404) 527-4000
Facsimile: (404) 527-4198
nathan.garroway@dentons.com
jeff.zachman@dentons.com

Richard L. Fenton (*Pro Hac Vice)*
Mark L. Hanover (*Pro Hac Vice)*
Jacqueline A. Giannini (*Pro Hac Vice)*

DENTONS US LLP
233 South Wacker Drive, Suite 5900
Chicago, IL 60606-6462

Telephone: (312) 876-8000
Facsimile: (312) 876-7934
richard.fenton@dentons.com
mark.hanover@dentons.com
jacqui.giannini@dentons.com

**CERTIFICATE OF SERVICE**

I hereby certify that on January 9, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Richard Kopelman
richard@kopelmansitton.com
Clint W. Sitton
clint@kopelmansitton.com
KOPELMAN SITTON LAW GROUP, LLC

Adam P. Princethal
adam@princemay.com
PRINCENTHAL & MAY, LLC

James C. Bradley
jbradley@rpwb.com
Michael J. Brickman
mbrickman@rpwb.com
Nina Fields Britt
nfields@rpwb.com
RICHARDSON PATRICK WESTBROOK & BRICKMAN, LLC

C. Cooper Knowles
cknowles@cckfirm.com
LAW OFFICES OF C. COOPER KNOWLES

On this 9th day of January 2019.

By: /s/ *Jeffrey A. Zachman*
Jeffrey A. Zachman

Attorney for the Defendant