# Exhibit A

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| BARBARA MORROW and BENNY MORROW, individually and on behalf of all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>ALLSTATE INDEMNITY COMPANY,<br><br>Defendant. | Civil Action No. 5:16-cv-00137-HL |

**DECLARATION OF JENNIFER PITTS, CRE, IN RESPONSE TO PLAINTIFFS' MOTION TO EXCLUDE HER TESTIMONY**

I, Jennifer Pitts, CRE, declare as follows:

I am over the age of 18 and am competent to make this declaration. I was retained on behalf of Allstate Indemnity Company to offer opinions in this matter.

1. I offer this Declaration in Response to Plaintiffs' Motion to Exclude my testimony ("Motion to Exclude"; DE 53) to clarify my experience and the basis for my opinions in my Expert Report dated August 12, 2018.

2. Plaintiffs' Motion to Exclude claims that I have "little, if any, practical experiences relevant to this case." (Motion to Exclude at 13.) This is factually incorrect.

3. I have more than 13 years of experience determining the impacts of detrimental conditions on thousands of single-family residential properties throughout the United States and Canada stemming from a range of potentially detrimental conditions.

4. I also consulted on behalf of State Farm Fire and Casualty Company in the matter of *Thompson v. State Farm Fire and Casualty Co.*, No. 5:14-cv-00032-MTT (M.D. Ga.), which involved water damage claims similar to those in this matter, for a period spanning four years.

5. Regardless of the specific cause of property value diminution, the framework for evaluating the potential impacts of a detrimental condition on property value are one and the same. *See* The Appraisal Standards Board of The Appraisal Foundation, 2016-2017 ed., Advisory Opinion 9 ("AO-9"); DE 52-26, Kilpatrick Report at ¶ 52 ("[A]lthough AO-9 focuses on environmental contamination, it nevertheless provides the appropriate *framework* for measuring diminution in value more generally."); DE 52-11, Murphy Report, at 4 (stating that AO-9 "is generally applicable to most detrimental conditions").

6. I also have years of experience developing and applying each of the specialized valuation methods that are generally recognized in appraisal guidance and literature as the appropriate methods for determining any impacts of detrimental conditions on residential property values (namely regression analysis, paired sales analysis and case study research). *See* Appraisal Institute, The Appraisal of Real Estate, 14th Edition, pages 214 and 215.

7. Plaintiffs' Motion argues that my second opinion—that if an assessment of diminution in value is required, then the scope of work required for each individual assessment will vary based on the nature and extent of the covered loss and the unique physical and locational attributes of each individual property—is speculative and unsupported. (Motion to Exclude at 5.) This statement is erroneous. In addition to the authorities cited in my Report, my opinion regarding the necessity and scope of work of a diminished value assessment is based on my extensive experience determining the impacts of detrimental conditions on single-family residential properties.

8. Nothing in the national standards or guidance for licensed or certified real estate appraisers requires that an appraiser assess for diminished value to a property based on an ordinary, routine homeowners loss which has been fully repaired in a workman-like manner.

9. Based on my experience as a certified real estate appraiser, outside the context of significant environmental damage, diminution in value to a residential property as a result of damage that has been repaired or remediated is rare. In my experience reviewing hundreds of single-family residential appraisals of homes throughout the United States, I have never seen an appraiser, in the ordinary course of conducting an appraisal of a single-family home, make a reduction to the value of a home based on an ordinary, routine homeowners loss which has been fully repaired in a workman-like manner.

10. Significant environmental damage has different attributes that would influence the value of a residential property differently than those of an ordinary, routine homeowners loss. For example, environmental damage often receives media attention, is regulated by state and/or federal environmental agencies and is often subject to ongoing monitoring and remediation.

11. Additionally, based on my experience as a certified real estate appraiser and in accordance with real estate appraisal standards and authoritative guidance, an appraiser conducting an appraisal of a single-family residential property in the ordinary course would rely on relevant market data (sales transactions from the appropriate market area) to determine the value of the property or any potential impacts to value. The appraiser would not rely on survey data or market interviews to the exclusion of actual market data.

12. Plaintiffs' argument that my "array of criticisms about Dr. Kilpatrick's and Mr. Murphy's opinions are unsupported by any real authority or any research or experience" is also incorrect and misleading. (Motion to Exclude at 5-6.)

13. Even though Dr. Kilpatrick and Mr. Murphy have not calculated the amount of diminished value for any specific property (other than Mr. Murphy's analysis of Named Plaintiffs' property), the evidence in support of a position that property value diminution exists,

or that it is possible under certain circumstances, should be based on relevant market data in accordance with generally accepted techniques for real estate appraisers.

14. The opinions of Plaintiffs' experts Dr. John Kilpatrick and Scott Murphy are not based on the generally accepted techniques for real estate appraisers in so much as they fail to consider market data and instead rely on literature reviews and survey data. *See* The Appraisal of Real Estate, 14th Edition, pages 214 and 215.

15. Dr. Kilpatrick and Mr. Murphy also violate generally accepted appraisal standards and guidance[1] by failing to consider individual property characteristics and instead make the unsupported assumption that the potential for diminution in value exists uniformly and that evidence from any one type of damage or claim can be broadly applied class-wide.[2]

I declare under penalty of perjury that the foregoing is true and correct.

Dated: 1/8/2019

[signature]
Jennifer N. Pitts, CRE

[1] *See e.g.* The Appraisal of Real Estate, 14th Edition, page 216 ("There are well established and generally recognized and accepted analytical techniques and methods to determine how cost, use, and risk factors referenced in AO-9 affect property prices, values, and markets. Appraisers must avoid substituting their judgment for that of the marketplace.")

[2] *See* Kilpatrick Response Report at ¶ 26 ("[N]otably, differences among property types, differences among degree of damage from these types of events, and differences in location across Georgia do not affect the *potential* for diminished value."); Murphy Report at pg. 4 ("there is always the potential for post-repair diminished value due to stigma").